George Richard **WALKS ON TOP**,
Appellant,

v.

**UNITED STATES of America**,
Appellee.

No. 21148.

United States Court of Appeals
Ninth Circuit.

Feb. 7, 1967.

James W. Ingalls, Coeur d'Alene, Idaho, for appellant.

Sylvan Jeppesen, U. S. Atty., Boise, Idaho, for appellee.

Before CHAMBERS, HAMLEY and MERRILL, Circuit Judges.

CHAMBERS, Circuit Judge.

Walks On Top and Donald George are Indians with separate homes on the Coeur d'Alene Indian Reservation in Idaho.

Walks On Top has been convicted on a charge that "by means and use of a dangerous weapon [a revolver, he] did forcibly assault, resist, oppose, impede and interfere with Donald George, Chief Policeman, Bureau of Indian Affairs, an officer and employee of the Indian field service of the United States, while the said Donald George was engaged in the performance of his official duties."

There is little doubt that Walks On Top shot Officer George in the back with a revolver, leaving him partially disabled for life. But we deal here with whether a federal crime was committed, with whether evidence was improperly received concerning events of the 12 to 15 hours preceding the shooting of George, and with whether the jury was properly instructed. Appellant's appointed counsel has represented the defendant-appellant very skillfully on trial and on appeal, but we affirm.

We begin our narration of the events in the middle of the story.

George was an Indian officer whose employer was the United States through the Bureau of Indian Affairs. He had been joined on the reservation by Sheriff Baltz of Benewah County, Idaho, at a point on a road therein. Each officer

was already "cross-deputized" into the other's service.

The two officers had received word that a woman, Arlie Jean Lowley Brown, a Coeur d'Alene Indian, and one or more men had been in some mischief earlier in the day in the City of Spokane, Washington, and in the County of Spokane south of the city.

During a search around the village of Tensed, Idaho, (on the reservation) George and Sheriff Baltz suddenly came face to face with Walks On Top and Arlie Brown. Walks On Top with drawn pistol ordered, "Drop your gun, copper," or something like it. The sheriff and George outbluffed him. He dropped his gun and he and Mrs. Brown were handcuffed and placed in the sheriff's station wagon.

While the officers were still in Tensed, the sheriff picked up a third person, one Kessler, a rather intoxicated person. Then out to a different area of the reservation the two officers (with the prisoners in custody) drove. The officers were in search of two men believed to have been part of the Brown-Walks On Top party earlier in the day.

Unfortunately the officers had overlooked on Walks On Top a gun previously taken from Spokane County officers. At a point out in the country, the sheriff's car was brought to a stop. Officer George remained behind to guard the three prisoners and Sheriff Baltz went on foot looking for the two missing men.

George dismounted from the sheriff's car, leaving the prisoners in it. For an instant, he turned his back and Walks On Top shot him in the back. Though crippled, George returned the fire from his shotgun. There followed considerable exchange of fire. George, badly wounded, was hit at least once more and Walks On Top also was seriously hurt. Both ended up in the same hospital in Spokane.

Appellant bears down heavily on the alleged prejudice arising from witnesses giving the whole sequence from the time the woman Mrs. Brown, and Walks On Top and two other Indians were discovered shortly before sun-up behind a Spokane tavern in an automobile by sheriff's deputies. After reinforcements arrived, the officers took the four Indians momentarily into custody. (This was still in the State of Washington and off the reservation.) But the Indians were more than a match for the officers, and soon they had the officers locked up in the paddy wagon section of the automobile.

After locking up the Spokane authorities and leaving them behind the Indians fled by car to their reservation in Idaho where the shooting eventually occurred.

■ We find unobjectionable the relating of the entire sequence of the day. The events of the day explained the last act,[1] the shooting, including the fact that George was shot by a gun taken by Walks On Top from the Washington officers.[2] Actually, until the tragic ending, the events had been rather funny and not very prejudicial. They paled into insignificance in prejudice when Walks On Top shot George in the back.

Appellant next tries to develop the contention that there is present here no violation of 18 U.S.C. § 111 and 18 U.S.C. § 1114. He argues that Officer George was not acting as a federal officer when shot. According to appellant, the evidence shows that George was with Sheriff Baltz of Benewah County, that he was a deputy sheriff of that county, and that he was acting under Baltz's direction.

The trial judge instructed the jury on this point:

"Three essential elements are required to be proved in order to establish the offense charged in the indictment. First: the act or acts of forci-

---

1. United States v. Spatuzza, 7 Cir., 331 F.2d 214.

2. In any event the trial judge three times instructed the jury that the events occur- ring earlier in the day were not to be considered in deciding whether Walks On Top was guilty of the crime charged.

bly assaulting an officer of the Indian Field Service of the United States while such officer was engaged in the performance of his official duties, as charged * * *."

■ We find substantial evidence to support the jury conclusion that George was acting as a federal officer. It includes the following:

1) The "position description" of Officer George's job which says that he has a duty to conduct investigations of violations of state law, to take action against offenders and to cooperate with state and local officials in the prevention and solution of crimes.

2) Evidence that, while Officer George was a deputy sheriff of Benewah County, this was an unpaid position with no defined duties. And that Sheriff Baltz in turn was an unpaid special assistant with the Bureau of Indian Affairs.

3) The fact that Officer George was wearing his federal police badge when shot. (Not much by itself but important when added to all of the other factors.)

4) Evidence that George initiated the reservation investigation and unsuccessfully tried to reach his own assistant before calling in Sheriff Baltz.

5) The fact that the two officers were routinely working together in an area where the proximity of state and federal land made cooperation imperative.

■■ Walks On Top has yet another arrow in his quiver. He would have us accept the proposition that the laws of the United States do not extend to offenses committed by one Indian against another. As Officer George is an Indian this would mean that any other Indian could freely shoot him without offending federal law. Appellant arrives at his unique contentions by reading a portion of 18 U.S.C. § 1152 out of context.[3] He argues that the second paragraph of this section immunizes intra-Indian offenses from the application of federal law. This argument completely lacks merit as the exception granted to Indians who abuse other Indians is, by the terms of the statute, only an exception from federal enclave law and not from the general law of the United States of which 18 U.S.C. § 111 and § 1114 (assaulting a federal officer) are a part.

■■ Appellant finally makes a number of objections grounded on the trial judge's instructions. After careful examination, we find that the instructions given were adequate. The crux of appellant's objections here is the failure of the trial court to give certain of his instructions designed to put to the jury the question of whether he had the right to resist an unlawful arrest. As the arrest here was clearly lawful, the trial court was correct in refusing to give these instructions. In any event, there is no question that a person who has been subdued and is peacefully in custody cannot shoot a federal officer in the back and then escape guilt by saying, "But the officer had no right to arrest me." Abrams v. United States, 99 U.S.App.D.C. 46, 237 F.2d 42.

---

3. "§ 1152. Laws governing

"Except as otherwise expressly provided by law, the general laws of the United States as to the punishment of offenses committed in any place within the sole and exclusive jurisdiction of the United States, except the District of Columbia, shall extend to the Indian country.

"This section shall not extend to offenses committed by one Indian against the person or property of another Indian, nor to any Indian committing any offense in the Indian country who has been punished by the local law of the tribe, or to any case where, by treaty stipulations, the exclusive jurisdiction over such offenses is or may be secured to the Indian tribes respectively. June 25, 1948, c. 645, 62 Stat. 757."