**Theodore B. STONE et al., Appellants,**

v.

**UNITED STATES of America,
Appellee.**

**Nos. 74–1383 to 74–1385.**

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 10, 1974.

Decided Nov. 1, 1974.

Certiorari Denied March 17, 1975.
See 95 S.Ct. 1405.

Richard B. Baer, Bismarck, N. D., for appellants.

David L. Peterson, Asst. U. S. Atty., Bismarck, N. D., for appellee.

Before VAN OOSTERHOUT, Senior Circuit Judge, and HEANEY and STEPHENSON, Circuit Judges.

HEANEY, Circuit Judge.

On May 15, 1974, Theodore B. Stone, James Miller and Milo Miller were found guilty of violating 18 U.S.C. §§ 111 and 1114.[1] They raise three issues on appeal. First, whether the trial court was without subject matter jurisdiction over the offense charged by reason of 18 U.

---

1. 18 U.S.C. § 111 states:

Whoever forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of his official duties, shall be fined not more than $5,000 or imprisoned not more than three years, or both.

Whoever, in the commission of any such acts uses a deadly or dangerous weapon, shall be fined not more than $10,000 or imprisoned not more than ten years, or both.

The relevant category of persons designated in 18 U.S.C. § 1114 is " * * * employee of the Indian field service of the United States."

S.C. § 1152.[2] Second, whether a Bureau of Indian Affairs police officer is an "* * * employee of the Indian field service of the United States" within the meaning of 18 U.S.C. § 1114. Third, whether the trial court abused its discretion by permitting a portion of the trial transcript to be read to the jury. We answer the first and third questions in the negative and the second in the affirmative and affirm the convictions.

## I.

Theodore B. Stone, James Miller and Milo Miller, all Indians, assaulted Ben Benson, also an Indian, on the Fort Berthold Indian Reservation. Mr. Benson is a police officer employed by the Bureau of Indian Affairs and stationed on the reservation. The defendants argue on appeal, as they did in the court below, that the federal courts are without subject matter jurisdiction over this intra-Indian offense committed in Indian country. They arrive at this conclusion by misreading 18 U.S.C. § 1152.

■ The first paragraph of the section extends to Indian country the general laws of the United States that make criminal certain acts committed within the sole and exclusive jurisdiction of the United States. The section refers only to those laws where the situs of the offense is an element of the crime. The second paragraph exempts from the purview of the laws referred to in paragraph one Indians who offend the person or property of another Indian. The exemption does not encompass the laws of the United States that make actions criminal wherever committed. As stated in Head v. Hunter, 141 F.2d 449 (10th Cir. 1944):

> * * * There is nothing in the legislation to indicate, or from which it can be inferred that the jurisdiction of the United States was restricted in respect to crimes which are generally applicable throughout the United States to all persons. We are cited to no Act, and find none, indicating an intention to except this appellant or his tribe from the scope of the Act creating and defining the offense. Appellant is charged with an offense against the laws of the United States which is generally applicable to all persons wherever committed * * *.

*Id.* at 451; *accord,* Walks On Top v. United States, 372 F.2d 422 (9th Cir.), cert. denied, 389 U.S. 879, 88 S.Ct. 109, 19 L.Ed.2d 170 (1967); Bailey v. United States, 47 F.2d 702 (9th Cir. 1931); U. S. Dep't of the Interior, Federal Indian Law, 448 (1958); *see* F. P. C. v. Tuscarora Indian Nation, 362 U.S. 99, 116, 80 S.Ct. 543, 4 L.Ed.2d 584 (1960); Davis v. Morton, 469 F.2d 593, 597 (10th Cir. 1972). We conclude that the trial court possessed subject matter jurisdiction over the offense charged.

■ This holding is consistent with the federal policy recognizing the Indian Nations as *quasi*-sovereign entities possessing the power to regulate their internal affairs. As stated in Iron Crow v. Oglala Sioux Tribe of Pine Ridge Res., 231 F.2d 89 (8th Cir. 1956):

> * * * Indian tribes * * * possess * * * inherent sovereignty excepting only where it has been specifi-

---

2. 18 U.S.C. § 1152 stated:
   Except as otherwise expressly provided by law, the general laws of the United States as to the punishment of offenses committed in any place within the sole and exclusive jurisdiction of the United States, * * * shall extend to the Indian country.
   This section shall not extend to offenses committed by one Indian against the person or property of another Indian, nor to any Indian committing any offense in the Indian country who has been punished by the local law of the tribe, or to any case where, by treaty stipulations, the exclusive jurisdiction over such offenses is or may be secured to the Indian tribes respectively.
   18 U.S.C. § 1153 provides that the federal courts shall have exclusive jurisdiction over thirteen major crimes when committed by an Indian against the person or property of another Indian. The offense here committed is not within the statute.

cally taken from them, either by treaty or by Congressional Act.

*Id.* at 94.

## II.

 Ben Benson, the officer assaulted, is an employee of the Bureau of Indian Affairs stationed on the Fort Berthold Indian Reservation. As such, he is within the class of persons protected by 18 U.S.C. §§ 111 and 1114; he is an "* * * employee of the Indian field service of the United States."

■ The term "Indian field service" refers to the BIA operations outside of Washington, D. C. It was first included in the statutes in 1936. 49 Stat. 1105.[3] At that time, the term "The Indian Service" was regularly substituted for the official title "Bureau of Indian Affairs" when referring to the Washington, D. C., offices of the BIA. Federal Indian Law, *supra* at 221. Congress, when referring to the BIA offices outside of Washington, D. C., used such terms as "field operations" and "field projects." The word "field" was the distinguishing adjective. *See*, 80 Cong. Rec. 1300, 1315 (1936). The statutory language expresses the intention of Congress to include within the class of persons protected the employees of the BIA stationed outside of Washington, D. C. Ben Benson is within that class.

## III.

■ Finally, the defendants challenge the judgment of the trial judge in acceding to the request of the jury to read to it a portion of the direct testimony of Ben Benson, the sole prosecution witness. They argue that the reading was prejudicial error for it highlighted the

prosecution's case at the expense of the defense. Whether a request of this nature is to be granted or denied is within the discretion of the trial court. United States v. Pollak, 474 F.2d 828, 832 (2nd Cir. 1973); United States v. Chicarelli, 445 F.2d 1111, 1114 (3rd Cir. 1971); United States v. De Palma, 414 F.2d 394, 396 (9th Cir. 1969), cert. denied, 396 U.S. 1046, 90 S.Ct. 697, 24 L.Ed.2d 690 (1970); Gregory v. United States, 365 F.2d 203, 206 (8th Cir. 1966), cert. denied, 385 U.S. 1029, 87 S.Ct. 759, 17 L.Ed.2d 676 (1967). We find no abuse of discretion here.

Affirmed.

---

**3.** 49 Stat. 1105 reads in relevant part:

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That section 1 of the Act entitled "An Act to provide punishment for killing or assaulting Federal officers", approved May 18, 1934 (48 Stat. 780; U.S.C., title 18, secs. 253 and 254), be and the same is hereby, amended to read as follows:

"That whoever shall kill, as defined in sections 273 and 274 of the Criminal Code, * * * any officer or employee of the Indian field service of the United States, while engaged in the performance of his official duties, or on account of the performance of his official duties, shall be punished as provided under section 275 of the Criminal Code."