**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**James F. SMITH, Defendant-Appellant.**

No. 76–2082.

United States Court of Appeals,
Seventh Circuit.

Argued June 9, 1977.

Decided Sept. 23, 1977.

Mark A. Frankel, Madison, Wis., for defendant-appellant.

William J. Mulligan, U. S. Atty., Charles H. Bohl, Asst. U. S. Atty., Milwaukee, Wis., for plaintiff-appellee.

Before CUMMINGS and PELL, Circuit Judges, and MARSHALL, District Judge.*

PELL, Circuit Judge.

On July 16, 1976, a one count indictment was returned against the appellant charging that he wilfully did forcibly assault Alexander Askenette, Jr., a Special Officer of the Bureau of Indian Affairs, Menominee Tribal Police, an officer of the federal government as defined in 18 U.S.C. § 1114[1] while said officer was engaged in the performance of his official duties, in violation of 18 U.S.C. § 111.[2] Following a bench trial, the defendant was convicted and was fined the sum of ten dollars.

On appeal, the appellant contends that the trial court lacked subject matter jurisdiction over an unenumerated offense by an Indian against the person of another Indian where the offense took place in Indian country. The appellant further contends that the evidence adduced at trial was insufficient to establish that the federal officer was assaulted while engaged in or on account of his official duties.

---

* District Judge Prentice H. Marshall of the United States District Court for the Northern District of Illinois is sitting by designation.

1. 18 U.S.C. § 1114 (Supp. V, 1975) provides for the protection of officers and employees of the United States, including, as pertinent here, "any officer or employee of the Indian field service of the United States . . . ."

2. 18 U.S.C. § 111 (1970), in pertinent part, provides:

Whoever forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of his official duties, shall be fined not more than $5,000 or imprisoned not more than three years, or both.

## I

On July 1, 1976, Alexander Askenette, Jr., an enrolled Menominee Indian, was given a summons for assault and battery to serve on James F. Smith by the Tribal Court clerk. Askenette first attempted service on appellant Smith, also an enrolled Menominee Indian, just outside the Tribal Courthouse, but the latter responded by telling Askenette in a vulgar manner to get away from him and that he didn't want to talk to Askenette. With that, Smith got up and went inside the courthouse. The officer followed the defendant into the tribal courtroom and closed the door behind him and stood in front of the door. When Askenette again attempted service of the summons, the defendant came toward him and pushed him with his hands, telling him to get out of the way. Special Officer Clifford Kaquatosh subdued the defendant and took him outside the courthouse. Tribal Judge Wilmer Peters was in the courtroom at the time of the assault and apparently said something to the effect that he wanted no scuffling in his courtroom and that the defendant should cool off. After hearing the testimony of eight witnesses, including the defendant, the district court judge expressed the view that the case should not have been brought, determined that he had no alternative but to entertain the action, found that a technical assault was indeed perpetrated, and imposed the ten dollar fine as the penalty.

## II

Appellant Smith contends that the exception contained in 18 U.S.C. § 1152,[3] when read in conjunction with the enumerated offenses contained in the Major Crimes Act, 18 U.S.C. § 1153,[4] strongly suggests that the trial court was without jurisdiction to hear this matter. Noting that simple assault is not one of the enumerated offenses under the latter provision and that the identity of the involved parties was covered by the exemption found in § 1152, the appellant urges that, by implication, the federal court is without jurisdiction to hear an unenumerated offense committed by an Indian against another Indian in Indian country. The appellant insists that the enactment of the Major Crimes Act, 18 U.S.C. § 1153, narrowed the scope but not the force of the holding in *Ex parte Crow Dog*, 109 U.S. 556, 3 S.Ct. 396, 27 L.Ed. 1030 (1883), where the Supreme Court reasoned that, in the absence of explicit Congressional direction, the Indian tribe retained *exclusive* jurisdiction to punish the offense of the murder of one Indian by another. *See* 109 U.S. at 571–72, 3 S.Ct. 396.

**3.** 18 U.S.C. § 1152 (1970) provides:

Except as otherwise expressly provided by law, the general laws of the United States as to the punishment of offenses committed in any place within the sole and exclusive jurisdiction of the United States, except the District of Columbia, shall extend to the Indian country.

This section shall not extend to offenses committed by one Indian against the person or property of another Indian, nor to any Indian committing any offense in the Indian country who has been punished by the local law of the tribe, or to any case where, by treaty stipulations, the exclusive jurisdiction over such offenses is or may be secured to the Indian tribes respectively.

**4.** 18 U.S.C.A. § 1153 (West Supp. 1977) provides:

Any Indian who commits against the person or property of another Indian or other person any of the following offenses, namely, murder, manslaughter, kidnaping, rape, carnal knowledge of any female, not his wife, who has not attained the age of sixteen years, assault with intent to commit rape, incest, assault with intent to commit murder, assault with a dangerous weapon, assault resulting in serious bodily injury, arson, burglary, robbery, and larceny within the Indian country, shall be subject to the same laws and penalties as all other persons committing any of the above offenses, within the exclusive jurisdiction of the United States.

As used in this section, the offenses of burglary and incest shall be defined and punished in accordance with the laws of the State in which such offense was committed as are in force at the time of such offense.

In addition to the offenses of burglary and incest, any other of the above offenses which are not defined and punished by Federal law in force within the exclusive jurisdiction of the United States shall be defined and punished in accordance with the laws of the State in which such offense was committed as are in force at the time of such offense.

It is true that the Supreme Court has suggested that the enumeration in the Major Crimes Act of certain offenses as applicable to Indians in the reservations "carries with it some implication of a purpose to exclude others." *United States v. Quiver*, 241 U.S. 602, 606, 36 S.Ct. 699, 701, 60 L.Ed. 1196 (1916). It is also true that the Court has formally recognized that Congress passed the Major Crimes Act in direct response to the decision of *Ex parte Crow Dog. Keeble v. United States*, 412 U.S. 205, 209, 93 S.Ct. 1993, 36 L.Ed.2d 844 (1973). But it is not so clear that the legislative determination to vest a residual jurisdiction in tribal courts of unenumerated offenses precludes district court jurisdiction of a simple assault where the victim is simultaneously an enrolled member of an Indian tribe and an employee of the Indian Field Service.

In *Stone v. United States*, 506 F.2d 561 (8th Cir. 1974), *cert. denied*, 420 U.S. 978, 95 S.Ct. 1405, 43 L.Ed.2d 659 (1975), the court ruled that the federal district court possessed subject matter jurisdiction over the offense of assaulting a police officer employed by the Bureau of Indian Affairs in violation of 18 U.S.C. §§ 111 and 1114. There, as here, the victim and the perpetrators of the assault were Indians. The court relied on *Head v. Hunter*, 141 F.2d 449 (10th Cir. 1944); and *Walks On Top v. United States*, 372 F.2d 422 (9th Cir. 1967), *cert. denied*, 389 U.S. 879, 88 S.Ct. 109, 19 L.Ed.2d 170, as support for the proposition that the exemption in the second paragraph of § 1152 did not encompass the laws that make actions criminal wherever committed.

The appellant sets forth a detailed criticism of the cases upon which *Stone* relied in determining that the exception granted to Indians who abuse other Indians is only an exception from federal enclave law and not from the general law of the United States. Specifically, he notes that numerous older cases reveal no Congressional or judicial intention to construe § 1152 as narrowly as did the court in *Walks On Top*. Although the appellant's analysis of the cases is technically correct, he fails to note the legislative history pertinent to the Indian Crimes Act of 1976. A legislative report sets forth a direct consideration of the problem, as follows:

> *Indian against Indian crimes occurring in Indian country.*—Section 1153 provides for Federal jurisdiction over the 13 enumerated offenses. Jurisdiction over other offenses rests with the tribe. *See* T. Vollman, "Criminal Jurisdiction in Indian Country: Tribal Sovereignty and Defendants' Rights in Conflict," 22 *Kansas L.Rev.* 387, 390 (1974).
>
> *Exceptions.*—The above pattern is subject to two overriding exceptions. First, some Federal laws have ceded to certain States complete or concurrent criminal jurisdiction over certain Indian country.
>
> . . .
>
> The second overriding exception is for crimes that are peculiarly Federal. Thus, there is Federal jurisdiction when the offense is one such as assaulting a Federal officer (18 U.S.C. §§ 111 and 1114) or defrauding the United States. *See, e. g., Walks On Top v. United States*, 372 F.2d 422 (9th Cir. 1967), *cert. den.* 389 U.S. 879 [88 S.Ct. 109, 19 L.Ed.2d 170]; *Head v. Hunter*, 141 F.2d 449 (10th Cir. 1944). [Footnote omitted.]

H.R.Rep. No. 94–1038, 94th Cong., 2d Sess. 3 (1976), *reprinted in* 3 U.S.Code Cong. & Admin.News 1125, at 1127 (1976). We agree that there are some analytic difficulties in the cases upon which *Stone* rested decision but we also think it reasonably clear that the legislative branch has accepted those cases as expressing a correct understanding of the interaction between §§ 1152 and 1153.

Appellant's argument that *Quiver* is "strong authority for the residual basis for tribal soverignty over intra-Indian offenses committed on the reservation" is by no means frivolous. Nonetheless, we must approach the present case in the light of the more recent Supreme Court decisions of *Keeble* and *United States v. Antelope*, 430 U.S. 641, 97 S.Ct. 1395, 51 L.Ed.2d 701 (1977).

In *Keeble*, the majority gives no direct consideration to the interaction between §§ 1152 and 1153. The majority did state that it had reasoned in *Ex parte Crow Dog* that, in the absence of explicit Congressional direction, the Indian tribe retained exclusive jurisdiction to punish the offense of the murder of one Indian by another. *See* 412 U.S. at 209–10, 93 S.Ct. 1993. The *Keeble* dissenters expressed the view that a federal court had no jurisdiction over the offense of simple assault, pointedly noting that Congress had established jurisdiction in the federal district courts over certain specifically enumerated offenses committed by Indians on Indian reservations and had vested a residual jurisdiction in other forums for all other offenses. 412 U.S. at 216–17, 93 S.Ct. 1993.

More recently, in *United States v. Antelope*, the Court has, as a matter of background, discussed the interrelation of §§ 1152 and 1153. A unanimous Court observed that "[e]xcept for the offenses enumerated in the Major Crimes Act, all crimes committed by enrolled Indians against other Indians within Indian country are subject to the jurisdiction of tribal courts." 97 S.Ct. at 1397 n.2. The *Antelope* court did recognize the residual jurisdiction of tribal courts but declined to expand upon *Quiver*'s and *Keeble*'s indications that the tribal jurisdiction might well be exclusive. The *Antelope* court further observed that "[f]ederal law ostensibly extends federal jurisdiction to all crimes occurring in Indian country, except offenses subject to tribal jurisdiction." *Id.* 97 S.Ct. at 1397 n.4. Once again, however, this comment does not assert that tribal court jurisdiction is to be exclusive. Finally, the *Antelope* court recognized that Indian reservations differ in certain respects from other enclaves.

But it also noted that "[f]ederal jurisdiction would extend to crimes, regardless of the race of the perpetrator or victim, committed on federal enclaves . . . ." 97 S.Ct. at 1399 n.9.

At oral argument, both the appellant and the Government urged that the *Antelope* decision supports their jurisdictional argument. The Government notes that the *Stone* interpretation of § 1152, 506 F.2d at 563,[5] is the same as virtually every court which has considered the question. *See, e. g., United States v. Top Sky*, 547 F.2d 483, 484 (9th Cir. 1976); *United States v. Cooper*, 538 F.2d 770, 775 (8th Cir. 1976), *cert. denied*, 429 U.S. 1099, 97 S.Ct. 1708, 52 L.Ed.2d 395 (1977); *United States v. Burns*, 529 F.2d 114, 117 (9th Cir. 1975); *United States v. McGrady*, 508 F.2d 13, 15–16 (8th Cir. 1974), *cert. denied*, 420 U.S. 979, 95 S.Ct. 1408, 43 L.Ed.2d 661 (1975); *Walks On Top, supra*, 372 F.2d at 425. The Government directs little specific inquiry into the apparent acceptance by the *Antelope* Court of the *Keeble* interpretation of the Major Crimes Act as a carefully limited intrusion of federal power into the otherwise *exclusive* jurisdiction of the Indian tribes to punish Indians for crimes committed on Indian land.[6] Instead it insists that the language of *Antelope* must be read in connection with federal enclave offenses. The Government sees only two possibilities. If the *Antelope* footnotes refer only to federal enclave statutes, they accurately state the existing law. Conversely, if the footnotes refer to federal criminal laws of general applicability, then *Antelope* is overruling *sub silentio* a number of earlier cases, including *Ex parte Gon-shay-ee*, 130 U.S. 343, 9 S.Ct. 542, 32 L.Ed. 973 (1889); and *In re Wilson*, 140 U.S. 575, 11 S.Ct. 870, 35 L.Ed. 513 (1891).

5. "The first paragraph of the section extends to Indian country the general laws of the United States that make criminal certain acts committed within the sole and exclusive jurisdiction of the United States. The section refers only to those laws where the situs of the offense is an element of the crime. The second paragraph exempts from the purview of the laws referred to in paragraph one Indians who offend the person or property of another Indian. The exemption does not encompass the laws of the United States that make action criminal wherever committed."

6. Indeed, it is clear from the *Keeble* opinion that there the Government itself pressed that characterization of the Major Crimes Act. *See* 412 U.S. at 209, 93 S.Ct. 1993. Here, of course, the Government insists that tribal court jurisdiction is not exclusive.

Appellant Smith takes a different approach. Essentially, he contends that the earlier cases do not construe § 1152 in the manner argued by the Government. He notes correctly that a close reading of *Gonshay-ee* reveals that the Supreme Court was referring to the precursor statute of § 1153 rather than § 1152. Because *In re Wilson* clearly was referring to the precursor of § 1152, appellant Smith's silence about that decision is troubling. However, he notes that *Keeble* represents an enormous push toward Indian self-government and Indian sovereignty and observes that the federal prosecution of the instant case represents an extensive intrusion into Indian self-government in a situation which was appropriate for tribal court jurisdiction. Thus, the appellant finds no real obstacle to a reading of *Antelope* as confirming the exclusive jurisdiction of the tribal court.

Because the issue was not directly before the Court, *Antelope* does not provide clear guidelines on the problem of concurrent or exclusive jurisdiction. The opinion can be read as supporting appellant Smith's argument that tribal courts possess and should be allowed to exercise jurisdiction over a simple assault by one Indian upon another. Nevertheless, the opinion does not flatly controvert the holdings in *Walks On Top*, in *Stone*, or in analogous cases. Nor does the language of *Antelope* require this court to repudiate the legislative view that there is federal jurisdiction when the offense is one such as assaulting a federal officer. *See* H.R.Rep. No. 94–1038, at 3, 3 U.S.Code Cong. & Admin.News, *supra* at 1127. The *Antelope* decision does make it clear that the Menominee Tribal Court was empowered to exercise jurisdiction over the assault in this case, but nothing in its language requires the distinct conclusion that the tribal court jurisdiction was exclusive.

▆ We note that other courts have recently recognized that concurrent rather than exclusive tribal court jurisdiction is consistent with federal policy. In *Oliphant v. Schlie*, 544 F.2d 1007 (9th Cir. 1976), *cert. granted*, 431 U.S. 964, 97 S.Ct. 2919, 53 L.Ed.2d 1059 (1977), the court reviewed

briefly the history and purpose of 18 U.S.C. § 1152, concluding that its extension of federal criminal laws applicable to federal enclaves to Indian country did not attempt to extinguish tribal jurisdiction or to declare federal jurisdiction exclusive. *Id.* at 1010. Although that case dealt directly with tribal jurisdiction over non-Indians, we think that its rationale is applicable in the present case. We conclude that the Menominee Tribal Court possessed power to preserve law and order on the reservation by punishing an assault upon an Indian BIA officer by another Indian. But we also conclude that the district court also possessed subject matter jurisdiction because of the "peculiarly Federal" nature of that simple assault. *See* H.R.Rep. No. 94–1038, at 3, 3 U.S.Code Cong. & Admin.News, *supra* at 1127.

▆ Accordingly, we hold that the district court had jurisdiction over the crime charged in the indictment. Our holding in no way suggests that the trial judge's belief that the prosecution should have been in the tribal court rested on an imperfect apprehension of public policy. The judge's remarks are consistent with a recognition that courts generally have little power to review the exercise of prosecutorial discretion. His conclusion that he had no alternative but to entertain the prosecution once it was commenced was correct.

### III

Appellant Smith argues that the requirement of 18 U.S.C. § 111 that the assault take place while the federal officer "while engaged in or on account of the performance of his official duties," *see* note 2 *supra*, implicitly means that the Government must show that the officer was engaged in or was assaulted *because of* his official duties. The appellant notes that the record reveals that Askenette was in the process of serving a tribal, rather than a federal, summons on the defendant. Thus, he submits that it is clear that the Government failed to meet its burden of proof on an essential element of the offense.

■ Because Askenette was an employee of the Indian Field Service of the United States, he was within the class of persons protected by 18 U.S.C. §§ 111 and 1114. We agree with the Government that the record conclusively shows that he was engaged in the performance of his official federal duties. He was attempting service of a tribal court summons issued under the authority of a court of the United States. *See generally* 25 C.F.R. §§ 11.1, 11.3, and 11.301 *et seq.* (1976). Moreover, the pertinent federal regulation demonstrates that by obeying the order of the tribal court Askenette was certainly not on a personal frolic of his own.[7]

For the reasons hereinbefore stated, the judgment of conviction is

AFFIRMED.

---

7. 25 C.F.R. § 11.304 (1976), in pertinent part, provides:

    (a) The superintendent of any Indian reservation may, with the approval of the Commissioner of Indian Affairs, employ and appoint Indians as Indian police . . . . .

    (b) The duties of an Indian policeman shall be:

(1) To obey promptly all orders of the police commissioner or the court of Indian offenses when assigned to that duty.