UNITED STATES of America, Plaintiff-Appellee,

v.

Donald A. JACKSON, Defendant-Appellant.

No. 78–3493.

United States Court of Appeals, Ninth Circuit.

July 17, 1979.

Peter H. Wells, Corey, Byler & Rew, Pendleton, Or., on brief; Steven H. Corey, Pendleton, Or., for defendant-appellant.

William W. Youngman, Asst. U. S. Atty., Portland, Or., for plaintiff-appellee.

Before WRIGHT and TANG, Circuit Judges, and PALMIERI, District Judge.*

EUGENE A. WRIGHT, Circuit Judge:

We must decide whether an enrolled member of the Confederated Tribes of the Umatilla Reservation (tribe), who hunted on the reservation in violation of a tribal ordinance, may be prosecuted in federal court under 18 U.S.C. § 1165 which provides:

> Whoever, without lawful authority or permission, willfully and knowingly goes upon any land that belongs to any . . . Indian tribe, . . . for the purpose of hunting, . . . shall be fined not more than $200 or imprisoned not more than ninety days, or both, and all game, fish, and peltries in his possession shall be forfeited.

Jackson appeals his conviction under that section.

Article IV of the tribe's constitution divides tribal members into three categories.[1] Because Jackson is of less than one-fourth tribal blood, he was enrolled as a member under Group C, the members of which may not participate in any rights or claims, including hunting,[2] arising out of the treaties to which the tribe is a party.

Jackson does not deny that he was hunting on the reservation without the tribe's

---

* Senior District Judge, Southern District of New York.

1. Article IV provides:

    The membership of the Confederated Tribes shall consist, as follows, of:

    (a) All persons of Indian blood whose names appear on the official census roll of the Confederated Tribes as of July 1, 1949; provided that corrections may be made in said roll by the General Council within five (5) years from the adoption and approval of this Constitution and By-Laws, subject to the approval of the Secretary of the Interior or his authorized representative.

    (b) All children born to enrollees of the Confederated Tribes, who are at least one-fourth (¼) degree of blood of the Confederated Tribes. Where only one parent of such children is an enrollee of the Confederated Tribes, the children may become members only upon application accepted by the General Council.

    (c) Any other person of blood of the Confederated Tribes may, upon application, be admitted by a majority vote of the General Council to participate in tribal government and to vote and to hold office. It is expressly understood, however, that such persons shall not participate in any right or claim arising out of treaties to which the Confederated Tribes are a party.

2. See Article I, Treaty of June 9, 1855, 12 Stat. 945, 946, between the Umatilla, Walla Walla, and Cayuse Tribes of Indians and the United States.

permission. Instead, he contends that Article IV violates his right to equal protection as set out in the Indian Civil Rights Act of 1968, 25 U.S.C. § 1302(8).[3]

We requested supplemental briefs on the question whether 18 U.S.C. § 1165 gives federal courts jurisdiction over an offense committed by one Indian against the property of another Indian on a reservation. Because we conclude that Congress did not intend the statute to extend to such offenses, we need not reach Jackson's equal protection claim.

## INDIAN SOVEREIGNTY

■ Indian tribes have inherent sovereignty over internal affairs, but it "is of a unique and limited character. It exists only at the sufferance of Congress and is subject to complete defeasance. But until Congress acts, the tribes retain their existing sovereign powers." *United States v. Wheeler*, 435 U.S. 313, 323, 98 S.Ct. 1079, 1086, 55 L.Ed.2d 303 (1978). *Accord, United States v. Mazurie*, 419 U.S. 544, 95 S.Ct. 710, 42 L.Ed.2d 706 (1975).[4]

■ The power to enact tribal laws and punish offenders is part of the tribes' inherent sovereignty. *Wheeler*, 435 U.S. at 328, 98 S.Ct. 1079. The Supreme Court early held that, in the absence of an explicit Congressional directive, Indian tribes have exclusive criminal jurisdiction over offenses committed by one Indian against another Indian, even when the crime is murder. *Ex parte Crow Dog*, 109 U.S. 556, 3 S.Ct. 396, 27 L.Ed. 1030 (1883).[5]

In response to the decision in *Crow Dog*, Congress passed the Major Crimes Act, as amended 18 U.S.C. § 1153. *See Keeble v. United States*, 412 U.S. 205, 93 S.Ct. 1993, 36 L.Ed.2d 844 (1973). Section 1153 lists those crimes Congress considered serious enough to warrant exclusive federal jurisdiction. Hunting on the reservation without the tribe's permission is not among those listed.[6]

■ Section 1153 should be read in conjunction with § 1152, which extends "the general laws of the United States as to the punishment of offenses . . . to the

---

**3.** 25 U.S.C. § 1302(8) provides:

No Indian tribe in exercising powers of self-government shall—

. . . . .

(8) deny to any person within its jurisdiction the equal protection of its laws or deprive any person of liberty or property without due process of law. .

**4.** The Supreme Court continues to recognize Indian tribes as separate sovereigns. In *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978), the Court held that suits against a tribe under the Indian Civil Rights Act, with the exception of writs of habeas corpus, are barred by the doctrine of sovereign immunity. In so deciding, the Court recognized the importance of tribal courts as appropriate forums for exclusive adjudication of disputes affecting personal and property interests of both Indians and non-Indians. *Id.* at 65, 98 S.Ct. 1670.

**5.** The Supreme Court recently cited *Crow Dog* for the proposition that the tribe is a separate community, and therefore cannot exercise jurisdiction over non-Indian offenders for breaches of tribal criminal law on the reservation. *Oliphant v. Suquamish Indian Tribe*, 435 U.S. 191, 210–211, 98 S.Ct. 1011, 55 L.Ed.2d 209 (1978). *Accord, United States v. Montana*, 598 F.2d 535 (9th Cir. 1979).

**6.** 18 U.S.C. § 1153 provides:

Any Indian who commits against the person or property of another Indian or other person any of the following offenses, namely, murder, manslaughter, kidnaping, rape, carnal knowledge of any female, not his wife, who has not attained the age of sixteen years, assault with intent to commit rape, incest, assault with intent to commit murder, assault with a dangerous weapon, assault resulting in serious bodily injury, arson, burglary, robbery, and larceny within the Indian country, shall be subject to the same laws and penalties as all other persons committing any of the above offenses, within the exclusive jurisdiction of the United States.

As used in this section, the offenses of burglary and incest shall be defined and punished in accordance with the laws of the State in which such offense was committed as are in force at the time of such offense.

In addition to the offenses of burglary and incest, any other of the above offenses which are not defined and punished by Federal law in force within the exclusive jurisdiction of the United States shall be defined and punished in accordance with the laws of the State in which such offense was committed as are in force at the time of such offense.

Indian country" with certain exceptions.[7] The exception relevant here is for "offenses committed by one Indian against the person or property of another Indian." *See Colliflower v. Garland,* 342 F.2d 369 (9th Cir. 1965). Thus, the general rule is that "except for the offenses enumerated in [section 1153], all crimes committed by enrolled Indians against other Indians within Indian country are subject to the jurisdiction of tribal courts." *United States v. Antelope,* 430 U.S. 641, 643 n. 2, 97 S.Ct. 1395, 1397, 51 L.Ed.2d 701 (1977).[8]

## INTERPRETATION OF § 1165

■ In the absence of 18 U.S.C. § 1165, Jackson would be subject exclusively to tribal jurisdiction for hunting on the reservation without the tribe's permission. The issue we face is whether Congress intended

§ 1165 to create an exception, beyond those enumerated in § 1153, to the exclusive jurisdiction of an Indian tribe over its members who commit crimes on the reservation.

The language of § 1165, on its face, appears to apply to Indians and non-Indians alike. The government argues that the general wording of the statute reflects an intent to encompass *any* hunting violation on the reservation. In support, it cites the predecessor of § 1165, which provided:

> That if any person, *other than an Indian,* shall, within the limits of any tribe with whom the United States shall have existing treaties, hunt, or trap, or take and destroy, any peltries or game, except for subsistence in the Indian country, such person shall forfeit the sum of five hundred dollars, and forfeit all the traps, guns, and ammunition in his possession,

7. 18 U.S.C. § 1152 provides:

> Except as otherwise expressly provided by law, the general laws of the United States as to the punishment of offenses committed in any place within the sole and exclusive jurisdiction of the United States, except the District of Columbia, shall extend to the Indian country.
>
> This section shall not extend to offenses committed by one Indian against the person or property of another Indian, nor to any Indian committing any offense in the Indian country who has been punished by the local law of the tribe, or to any case where, by treaty stipulations, the exclusive jurisdiction over such offenses is or may be secured to the Indian tribes respectively.

8. This rule is not absolute, however. In *Keeble v. United States,* 412 U.S. 205, 214, 93 S.Ct. 1993, 36 L.Ed.2d 844 (1973), the Supreme Court held that where an Indian is prosecuted under § 1153, he is not deprived of the protection afforded by an instruction on a lesser included offense, even though the lesser offense is not one of those offenses specified in the Act.

In *Stone v. United States,* 506 F.2d 561 (8th Cir. 1974), *cert. denied,* 420 U.S. 978, 95 S.Ct. 1405, 43 L.Ed.2d 659 (1975), the court held there is federal jurisdiction over the offense of assaulting a police officer employed by the Bureau of Indian Affairs. The offense occurred on the reservation and both the victim and his assailant were members of the tribe. Although simple assault is not an enumerated offense allowing federal jurisdiction under § 1153, the court cited *Walks On Top v. United States,* 372 F.2d 422 (9th Cir.), *cert. denied,* 389 U.S. 879, 88 S.Ct. 109, 19 L.Ed.2d 170 (1967), in finding that the exceptions contained in § 1152 did not

apply to laws which make an action criminal regardless of where it is committed, such as assaulting a federal officer.

Since the crime under § 1165 is limited to Indian lands, this general exception is inapplicable here. The reasoning behind the *Stone* decision, moreover, has been called into question. *United States v. Smith,* 562 F.2d 453 (7th Cir. 1977). In *Smith,* where the court was faced with a situation identical to that in *Stone,* the panel refused to rely on the *Stone* rationale, preferring instead to look to more recent legislative history to find that federal subject matter jurisdiction existed. It quoted a legislative report on the Indian Crimes Act of 1976 which is of value here.

> *Indian against Indian crimes occurring in Indian country.*—Section 1153 provides for Federal jurisdiction over the 13 enumerated offenses. Jurisdiction over other offenses rests with the tribe. . . .
>
> *Exceptions.*—The above pattern is subject to two overriding exceptions. First, some Federal laws have ceded to certain States complete or concurrent criminal jurisdiction over certain Indian country. . . .
>
> The second overriding exception is for crimes that are peculiarly Federal. Thus, there is Federal jurisdiction when the offense is one such as assaulting a Federal officer (18 U.S.C. §§ 111 and 1114) or defrauding the United States. . . .

H.R.Rep.No.94–1038, 94th Cong., 2d Sess. 3 (1976), *reprinted in* 3 U.S.Code Cong. & Admin. News, p. 1125, at 1127 (1976). *See also United States v. Smith,* 562 F.2d at 456. It is significant that 18 U.S.C. § 1165 was not an exception recognized by Congress.

used or procured to be used for that purpose, and peltries so taken.

Ch. 161, Section 8, 4 Stat. 730 (1834), subsequently codified as 25 U.S.C. § 216 (repealed 1960) (emphasis added). The government maintains the deletion of the words "other than an Indian" shows that Congress intended § 1165 to apply to Indians on their own reservations.

We disagree. Other changes in the predecessor statute indicate that, when it enacted § 1165, Congress was concerned only with non-Indian hunters and fishermen who were not subject to tribal authority. The section now reads: "Whoever, without lawful authority or permission, willfully and knowingly goes upon any land that belongs to any . . . Indian tribe . . . ." Thus, § 1165 does not apply to a member of the tribe who has a right to be on the land. As we said in *United States v. Sanford*, 547 F.2d 1085 (9th Cir. 1976):

> It is significant to note that section 1165 does not directly prohibit hunting and fishing but makes the act of going upon the Indian reservation a violation if done for the purpose of hunting or fishing . . . [S]ection 1165 must be considered to be a statute providing a penalty for trespass to an Indian reservation and not an attempt by Congress to enter the field of fish and game regulation.

*Id.*, at 1089, *quoting State v. Danielson*, 149 Mont. 438, 441, 427 P.2d 689, 691 (1967).

The legislative history of § 1165 confirms this interpretation. The Senate Judiciary Committee report explained:

> The problem confronting Indian tribes with sizeable reservations is that the United States provides no protection against trespassers comparable to the protection it gives to Federal property as exemplified by title 18, United States Code, section 1863. Indian property owners should have the same protection as

other property owners. For example, a private hunting club may keep nonmembers off its game lands or it may issue a permit for a fee. One who comes on such lands without permission may be prosecuted under State law but a non-Indian trespasser on an Indian reservation enjoys immunity. This is by reason of the fact that Indian tribal law is enforceable against Indians only; not against non-Indians.

S.Rep.No.1686, 86th Cong., 2d Sess. 2 (1960).

A letter from Roger Ernst, the Assistant Secretary of the Interior, to Emanuel Celler, Chairman of the House Judiciary Committee, stated:

> While non-Indians are subject to State laws when they go on Indian reservations, many of the States do not have criminal trespass laws, and in other States Indians find it impossible to comply with the requirements of State laws designed to control trespass. Particularly is this true in cases of the so-called closed or unallotted Indian reservations in States where the State law requires each 25 square acres to be enclosed or posted. Non-Indians are not subject to the jurisdiction of Indian courts and cannot be tried in Indian courts on trespass charges. The Indians therefore have no protection when the State laws cannot be applied.

H.R.Rep.No.2593, 85th Cong., 2nd Sess. 4, 5 (1958).[9]

There is nothing in the legislative history to suggest that Congress intended § 1165 to apply to Indians on their own reservations. Nor is there any case law to support this proposition.

## LACK OF TRIBAL ENFORCEMENT PROCEDURE

The government points out that at the time of Jackson's arrest the tribe had no

---

9. The preface of §§ 1164 and 1165 also indicates these sections were intended to apply only when Indian reservations are entered illegally. It reads:

AN ACT

To amend title 18 of the United States Code to make it unlawful to destroy, deface, or remove certain boundary markers on Indian reservations, and to trespass on Indian reservations to hunt, fish, or trap.

Pub.L.No.86–634, 74 Stat. 469 (1960).

mechanism to deal with hunting violations by Group C members. The only tribal penalty for violations that existed was the permanent revocation of hunting privileges by the Tribe's Board of Trustees. The government argues that because the Tribe had not taken any steps to deal with violations by Group C members, the federal government should have jurisdiction over them, as it would over non-Indians.

This argument confuses jurisdiction with enforcement procedures. The fact that the Tribe had not set up a system to punish certain of its members does not mean that it lacked the power to do so. It merely failed to exercise its jurisdiction.[10]

Reversed and remanded for dismissal for want of subject matter jurisdiction.

10. The tribe established a tribal court of fish and game offenses and adopted a comprehensive fish and game code effective January 1, 1978. Under the Indian Civil Rights Act of 1968, it may punish members with imprisonment not exceeding six months or a fine not greater than $500, or both. 25 U.S.C. § 1302(7).

The government admits that jurisdiction over Group C members would now rest with the tribe by virtue of their status as enrollees. We express no opinion whether Jackson may now be prosecuted in the tribal court for the alleged violation involved in this appeal.