UNITED STATES of America,
Plaintiff-Appellee,

v.

James D. BARQUIN,
Defendant-Appellant.

No. 86–1053.

United States Court of Appeals,
Tenth Circuit.

Aug. 20, 1986.

David B. Hooper, Riverton, Wyo., for defendant-appellant.

Francis Leland Pico, Asst. U.S. Atty. (Richard A. Stacy, U.S. Atty., with him on brief), Cheyenne, Wyo., for plaintiff-appellee.

Before MOORE, SETH and ANDERSON, Circuit Judges.

JOHN P. MOORE, Circuit Judge.

This is an appeal following entry of a conditional plea of nolo contendere pursuant to Fed.R.Crim.P. 11(a)(2). The sole question presented by this appeal is whether an Indian tribe or its business council is a "local government agency" within the context of 18 U.S.C. § 666(c). We conclude the question is answered in the negative and reverse.

The defendant, an enrolled member of the Shoshone/Arapahoe Tribes, entered his plea to a charge, under 18 U.S.C. § 666, of paying $1,000 to an official of the Northern Arapahoe Business Council to obtain favorable treatment on the award of a contract for a Wind River Reservation project.[1] Defendant moved to dismiss the indictment contending that the definitional provisions of § 666 exclude Indian tribes as an entity and that § 666(c) is unconstitutionally vague, ambiguous, and overbroad. His motion was summarily denied, and this appeal, raising the same issues, followed.

The statute, in pertinent part, states:

Whoever offers, gives, or agrees to give to an agent of an organization or of a State or *local government agency ...*

---

1. At oral argument, Barquin stated that he was not interested in any specific contract but only sought enforcement of a tribe resolution en-

couraging the use of Indian labor on projects. Barquin analogizes his conduct to a campaign contribution.

anything of value for or because of the recipient's conduct in any transaction or matter ... shall be imprisoned not more than ten years or fined not more than $100,000 or an amount equal to twice that offered, given or agreed to be given, whichever is greater, or both so imprisoned and fined.

18 U.S.C. § 666(c) (emphasis added).

Barquin concedes the other elements of § 666(c) have been met; therefore, the only issue on appeal, aside from the constitutional issue, is whether the person to whom the payment was made was an agent of a "local government agency."[2]

■ Our statutory analysis begins with the principle that because § 666 is punitive, it must be strictly construed. *Dowling v. United States*, — U.S. —, 105 S.Ct. 3127, 87 L.Ed.2d 152 (1985). Therefore, the language and legislative history of § 666 must be scrutinized to determine if Barquin's conduct comes within the statute's prohibitions. *Id.*

The relevant terms of the statute are carefully defined:

"government agency" means a *subdivision of* the executive, legislative, judicial, or other branch of *a government,* including a department, independent establishment, commission, administration, authority, board, and bureau; or a corporation or other legal entity established by, and subject to control by, a government or governments for execution of a governmental or intergovernmental program; and

"local" means of or pertaining to a *political subdivision within a State.*

18 U.S.C. § 666(d)(3), (4) (emphasis added). These definitions do not specifically include an Indian tribe or its business council. Thus, the issue is whether an Indian tribe or its business council are subdivisions of the executive branch of a political subdivision within a state.

The government takes the position that because the Arapahoe Tribe is physically located "within" the State of Wyoming, it must be a local government agency by definition. Defendant contends a "political subdivision" connotes a subdivision of a state, such as a city or township, and since an Indian tribe is a sovereign entity wholly independent of a state, Indian tribes and their business councils do not fall within the statutory definition.

This problem has not been previously considered. Thus, we turn to the legislative history of the statute to guide us in our interpretation of its meaning.

We note first that § 666 was adopted to reach bribery of the type involved in *United States v. Hinton,* 683 F.2d 195 (7th Cir.1982), *aff'd, Dixson v. United States,* 465 U.S. 482, 104 S.Ct. 1172, 79 L.Ed.2d 458 (1984). S.Rep. No. 225, 98th Cong. 2d Sess. 369-70, *reprinted in* 1984 U.S. Code Cong. & Ad. News 3510-11.[3] The legislative history further provides:

This ... [statute] is designed to create new offenses to augment the ability of the United States to vindicate significant acts of theft, fraud, and bribery involving Federal monies that are disbursed to private organizations or State and local governments pursuant to a Federal program.

. . . .

The terms ... "government agency", and "local" are defined in subsection (d) and require no further explication.

*Id.* In adopting § 666, Congress may have sought to punish illegal payments to *any* person who deals with a significant amount of federal money. That purpose presumably would be met in this case because the recipient of the money from Barquin dealt with federal funds. Nevertheless, the legislative history fails to clarify the question before us today; that is, are payments to an agent of an *Indian tribe* within the

---

**2.** The government concedes the tribe is not an "organization" as that term is defined in 18 U.S.C. § 666(d)(2).

**3.** *Hinton* involved solicitation of payments by "public officials" under 18 U.S.C. § 201(c), who were not employees of a governmental agency but who, nevertheless, administered public funds.

statute's prohibitions, notwithstanding the agent dealt in government funds of sufficient quantity. In pursuit of the answer to this question, we cannot look to the general objective of § 666 because our analysis is circumscribed by the exacting terms of the statute.

■ Reading the statute as written, it is evident that the business council meets the simple definition of a "government agency," since it is not contested that a tribe is a sovereign entity which governs the affairs of its members. Yet, it is also evident that a tribe, even though physically located within the geographic boundaries of a state, is not a "local" government agency.

An Indian tribe exists at the sufferance of Congress, and so long as Congress permits, tribes retain their sovereign powers. *United States v. Wheeler*, 435 U.S. 313, 323, 98 S.Ct. 1079, 1086, 55 L.Ed.2d 303 (1978). Thus, tribes are wholly distinct from, and not subject to, the authority of any state, unless Congress expressly curtails traditional tribal sovereignty in favor of state jurisdiction. *See* 18 U.S.C. § 1162. *See also Rice v. Rehner*, 463 U.S. 713, 103 S.Ct. 3291, 77 L.Ed.2d 961 (1983). As governing bodies, tribes are complete unto themselves. Indeed, in issues of self-government, a tribe is not even subordinate to the federal government because, so long as it retains its sovereignty, it governs independently. *Wheeler*, 435 U.S. at 327–32, 98 S.Ct. at 1088–91. *Donovan v. Navajo Forest Products Industries*, 692 F.2d 709 (10th Cir.1982). While Indian tribes owe their powers and indeed their existence to Congress, they have no similar relationship with the state in which they are located. *Rice*, 463 U.S. at 719, 103 S.Ct. 3295–96 (citing *Washington v. Confederated Tribes of Colville Indian Reservation*, 447 U.S. 134, 154, 100 S.Ct. 2069, 2081–82, 65 L.Ed.2d 10 (1980)). Accordingly, an Indian tribe cannot fit within the definition of a "local" governmental agency because a tribe is not a "subdivision" of any entity. The sovereignty of the tribe makes inapposite any other construction of the statute.

The government relies upon *Witzenburger v. State ex rel. Wyoming Community Development Authority*, 575 P.2d 1100 (Wyo.1978), to support its argument that the Arapahoe tribe is a political subdivision within the context of § 666(d). Yet, in that case, the Wyoming Supreme Court stated: "[A] political subdivision contemplates a prescribed geographical area with boundaries, public officers selected by its inhabitants through public elections, with authority for *subordinate self-government*, acting for the public purpose for which the area was organized." *Witzenburger*, 575 P.2d at 1113 (emphasis added). A tribe meets all of that criteria save one: it is not a "subordinate" self-government; it is a sovereign.

Our conclusion is not inconsistent with cases which hold that tribal members are subject to general federal criminal statutes unless a particular Indian right or policy is infringed by enforcement of the law. *See, e.g., United States v. Blue*, 722 F.2d 383 (8th Cir.1983); *United States v. Farris*, 624 F.2d 890 (9th Cir.1980), *cert. denied*, 449 U.S. 1111, 101 S.Ct. 920, 66 L.Ed.2d 839 (1981); *Stone v. United States*, 506 F.2d 561 (8th Cir.1974), *cert. denied*, 420 U.S. 978, 95 S.Ct. 1405, 43 L.Ed.2d 659 (1975); *Head v. Hunter*, 141 F.2d 449 (10th Cir. 1944). In this case, the specific definitions of § 666 require that we analyze the governmental structure of the tribe and its place within the hierarchy of governments rather than the conduct of the tribal members. Decades of common law analyzing the interstitial relationship of the tribes to the federal and state governments establish that Indian tribes, although physically within the territory of the United States and subject to the plenary power of Congress, nonetheless "remain a separate people, with the power of regulating their internal and social relations." *Wheeler*, 435 U.S. at 322, 98 S.Ct. at 1085. Therefore, we decline the government's construction of the term "political subdivision."

Accordingly, we hold that Congress did not include Indian tribes or their business councils within the ambit of 18 U.S.C. § 666. Moreover, the narrowly drawn defi-

nitions contained within the section exclude it from the category of general federal crimes which are applicable to members of a tribe. We are therefore compelled to observe, if it is the intent of Congress to include tribes within the ambit of § 666, it must do so with specificity. Having decided this question in favor of the defendant, we do not reach the constitutional issue.

The judgment of the district court is REVERSED and the case remanded with instructions to dismiss the indictment.

SETH, Circuit Judge, concurring:

I concur in the position expressed by the majority that Congress did not intend to include Indian tribes nor their business councils within the coverage of 18 U.S.C. § 666.